IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARVIN L. CLOTT AND DARRYLE CLOTT,
AS TRUSTEE OF THE MARVIN AND DARRYLE
CLOTT REVOCABLE TRUST DATED
NOVEMBER 11, 2005, RICHARD K. THOMAS,
STEVEN L. HARRIS AND DALE J. HARRIS, AS
TRUSTEES OF THE STEVEN L. HARRIS AND DALE
J. HARRIS TRUST DATED DECEMBER 21, 2020,
PATRICK D. WOLFE AND KAREN L. WOLFE,
EUGENE E. MITBY AND JUDITH J. MITBY, MARY
J. SULLIVAN, HEIDI A. WEINBERGER, DIANE K.
WALLESER, STACY A. MITBY, RICHARD A.
AMUNDSEN AND GEORGIA M. AMUNDSEN,
DOUGLAS M. ZUEGE AND ELIZABETH A. ZUEGE,
HB HOLDINGS LLC, KIRK N. FRIEDLINE, and
WOODBRIDGE CONDOMINIUM ASSOCIATION,
INC.,

                Plaintiffs,

   v.

UNITED STATES OF AMERICA and
U.S. FISH AND WILDLIFE SERVICE,

                Defendants.

OPINION and ORDER

23-cv-406-jdp

---

This case arises from a title dispute over a portion of submerged waterbed along the Mississippi River near La Crosse, Wisconsin. Plaintiffs are residential property owners who maintain docks and piers in the river. In 2005 and 2006, the United States purchased the waterbed adjacent to plaintiffs' property; that land is now administered by the Fish and Wildlife Service as part of the Upper Mississippi National Wildlife and Fish Refuge. In 2023, the government demanded that plaintiffs remove their docks and piers from the river. Plaintiffs responded by bringing this action to quiet title and for declaratory and injunctive relief, asking the court to affirm plaintiffs' property rights to maintain their docks and piers and to use the

river for recreational purposes. The government moves to dismiss plaintiffs' amended complaint. Dkt. 21.

The court will dismiss the amended complaint because plaintiffs have not adequately pleaded a property interest in the waterbed under the doctrine of riparian rights or adverse possession. The waterbed at issue is man-made, not natural, so shoreline owners such as plaintiffs don't have a presumption of riparian rights. And plaintiffs have not pleaded facts sufficient to show adverse possession. Plaintiffs may not further amend their complaint for their riparian rights claims or claims of adverse possession that rely on plaintiffs' recreational use of the waterbed, because those claims are foreclosed as a matter of law. But plaintiffs may replead their adverse possession claims over the portions of the waterbed below their docks and piers and any portions of the waterbed where they have installed stairs, riprap, or other improvements.

ALLEGATIONS OF FACT

This case concerns a portion of submerged waterbed in the Mississippi River near La Crosse, Wisconsin known as "Bluff Slough." Bluff Slough is not part of the Mississippi River's main channel. It used to be a natural tributary of the river, but it was expanded in the 1930s by flooding from the installation of a dam.

Plaintiffs are fourteen residential owners of two types of property along Bluff Slough. Some of the plaintiffs, whom the parties refer to as the "deeded plaintiffs," own shoreline directly abutting Bluff Slough. The other plaintiffs, whom the parties refer to as the "non-deeded plaintiffs," own property near but not directly on the shoreline, with easements allowing them to access the shoreline "to the water's edge." Plaintiffs' parcels were previously

part of two larger parcels, one owned by Clarence and Elinor Zielke, and the other owned by the Catholic Diocese of La Crosse. The Zielkes and the Catholic Diocese also owned the submerged waterbed adjacent to their parcels.

The Zielkes and the Catholic Diocese installed structures in Bluff Slough when they owned the property, including a boathouse and a dock. Once the tracts were subdivided into residential parcels, the owners of those parcels, including plaintiffs, also installed and maintained docks and piers, and regularly used the water from the shoreline to the line of navigation for fishing, recreation, and boating. They also improved the shoreline and the waterbed by dredging, landscaping, installing riprap, and constructing stairs and decks.

In 2005 and 2006, the United States purchased two submerged parcels of waterbed that were formerly part of the Zielke and Catholic Diocese parcels. Dkts. 19-27 and 19-28. After the government purchased the parcels, the Fish and Wildlife Service began administering them as part of the Upper Mississippi River National Wildlife and Fish Refuge. Years later, the Fish and Wildlife Service commissioned a survey of its submerged parcels and discovered plaintiffs' docks and piers on those parcels. The Fish and Wildlife Service demanded that plaintiffs remove the docks and piers and threatened them with fines and imprisonment if they failed to comply. Plaintiffs responded with this lawsuit asserting rights over the waterbed.

ANALYSIS

Plaintiffs assert claims against the United States under the Quiet Title Act, against the United States and the Fish and Wildlife Service under the Declaratory Judgment Act, and against the Fish and Wildlife Service under the Administrative Procedure Act. Plaintiffs ask the court to affirm state-law property rights, which purportedly allow them to maintain docks

and piers in Bluff Slough and to use the waterbed from the shoreline to the navigation line for recreation, fishing, and boating.

The court will dismiss the amended complaint. Plaintiffs' claims are not preempted by federal law as the government asserts. But plaintiffs have not identified a waiver of sovereign immunity to sustain their non-Quiet Title Act claims, and they have not adequately alleged a property right under Wisconsin law upon which to base their Quiet Title Act claims.

**A. Preemption**

Federal preemption doctrine prohibits courts from giving "effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015); *see also Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 457 (7th Cir. 2023). The government contends that plaintiffs' asserted state-law property rights are preempted because they conflict with federal law regulating the Upper Mississippi National Wildlife Refuge.

State laws are preempted as conflicting with federal law under two circumstances: (1) if it would be physically impossible to comply with both state and federal law; or (2) if the state law would create an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). In analyzing any preemption claim, "the purpose of Congress is the ultimate touchstone.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The general rule is that federal law does not preempt state law unless "that was the clear and manifest purpose of Congress." *Id.*

The government contends that plaintiffs' claims are preempted by 50 C.F.R. § 27.92, a Fish and Wildlife Service regulation that provides that "[n]o person shall without proper authority construct, install, occupy, or maintain any building, log boom, pier, dock, fence, wall,

4

pile, anchorage, or other structure or obstruction in any national wildlife refuge." The government argues that any state law property right allowing plaintiffs to maintain their docks and piers infringes the Fish and Wildlife Service's regulatory authority to prevent the placement of docks and piers in the refuge.

Section 27.92 does not preempt plaintiffs' claims of state-law property rights. The regulation doesn't ban piers and docks, so it is not impossible to comply with both the regulation and state-law property rights. And allowing docks and piers protected by state-law property rights is not inconsistent with congressional intent. Section 27.92 was promulgated under the authority of the Upper Mississippi River Wildlife and Fish Refuge Act, which was created to protect wild plants and animals in the Upper Mississippi River region. 16 U.S.C. § 723. The government has not shown that it needs to remove all docks and piers to accomplish that purpose, nor that Congress intended to deprive local landowners of their property rights when it passed the statute.

In its reply brief, the government cites *Burlison v. United States* to argue that the Fish and Wildlife Service can regulate plaintiffs' docks and piers even if plaintiffs have private property rights. 533 F.3d 419 (6th Cir. 2008). The plaintiffs in *Burlison* had an easement to use an access road that cut through a U.S. wildlife refuge. *Id.* at 421. The court allowed the Fish and Wildlife Service to enforce "reasonable regulations" on plaintiffs' use of the easement, even though the easement was private property rather than refuge land. *Id.* at 440. But importantly, the court noted that it likely would not have permitted the government to "completely eviscerate" plaintiffs' property rights. *Id.* at 440. In a similar case, the Fifth Circuit also expressed concern about federal regulations of refuge land eviscerating preexisting property rights. *Sch. Bd. of Avoyelles Parish v. United States DOI*, 647 F.3d 570, 582 (5th Cir. 2011) ("A

5

complete evisceration of an adjoining landowners rights might *inter alia* raise questions about the constitutionality of the Department's actions under the Takings Clause.") Here, the government asks the court to fully preempt plaintiffs' efforts to enforce their state law property rights. *Burlison* does not support that sweeping preemption.

## B.  Sovereign immunity

Plaintiffs are suing the United States, so they must identify a statute that waives the government's sovereign immunity for each of their claims. *Wisconsin Valley Imp. Co. v. United States*, 569 F.3d 331, 333 (7th Cir. 2009). For plaintiffs' Quiet Title Act claims, the waiver is in 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest. . ."). But the government contends that it has not waived sovereign immunity for plaintiffs' other claims, specifically, the claims for declaratory relief under 28 U.S.C. § 2201, and the claims under the Administrative Procedure Act asking the court to review the Fish and Wildlife Service's enforcement actions against plaintiffs. The government contends that these claims are barred by the Quiet Title Act's exclusivity rule.

The Quiet Title Act is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). The court of appeals reads the exclusivity rule broadly, concluding that any claim that "require[s] resolution of a disputed claim to real property in which the United States claims an interest" must be brought under the Quiet Title Act, even if the claim purports to request a relief other than quieting title. *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383 (7th Cir. 2000).

6

Plaintiffs admit that they cannot pursue their claims under the Declaratory Judgment Act or the Administrative Procedure Act to the extent that those claims require resolution of their title dispute. But they contend that each of those claims goes beyond their title dispute. According to plaintiffs, their request for a declaratory judgment is an alternative claim in the event that the court determines that plaintiffs' claims of riparian rights are claims for water rights rather than claims for real property. (The Quiet Title Act does not apply to disputes involving water rights. 28 U.S.C. § 2409a(a)). And the Administrative Procedure Act allows the court to order a temporary injunction preventing the Fish and Wildlife Service from levying fines and other penalties against plaintiffs, relief that the Quiet Title Act does not provide.

Plaintiffs are incorrect that the Administrative Procedure Act claim goes beyond the title dispute. To find the Fish and Wildlife Service's enforcement actions unlawful, the court would have to determine that plaintiffs have rights in the disputed property, so resolving the Administrative Procedure Act claim requires resolving the title dispute. This claim must be dismissed under the exclusivity rule.

Plaintiffs' request for declaratory relief has a different problem. Plaintiffs assert this claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, which does not include a waiver of sovereign immunity, so they rely on the McCarran Amendment for that waiver. 43 U.S.C. § 666. The McCarran Amendment waives sovereign immunity for suits to adjudicate water rights, but it only applies to cases involving a "general adjudication of all of the rights of various owners on a given stream," not to private suits to determine water rights solely between individual claimants and the United States. *Dugan v. Rank*, 372 U.S. 609, 618 (1963); *see also Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996). Plaintiffs agree that this limitation applies, but they argue that this is a general adjudication because it will resolve the concerns of

7

all pier and dock owners along Bluff Slough. But a suit about the rights of shoreland owners to place docks and piers, even if it involves all shoreland owners along a particular stretch of water, is not a general adjudication of all water rights. The McCarran Amendment does not apply to this suit, so plaintiffs have not identified a waiver of sovereign immunity for their alternative claim regarding water rights. The court will dismiss plaintiffs' non-Quiet Title Act claims. These are the only claims asserted against the Fish and Wildlife Service, so the Fish and Wildlife Service will be dismissed as a defendant.

## C. State-law property rights

Plaintiff's Quiet Title Act claims are grounded in two property rights that plaintiffs assert under Wisconsin law. First, plaintiffs assert riparian rights. Second, plaintiffs assert that they have acquired property rights through adverse possession. For the reasons below, the court concludes that plaintiffs have not pleaded property rights on either basis.

### 1. Riparian rights

In counts one and three of the amended complaint, plaintiffs assert riparian rights to use the river to the line of navigation and to maintain their docks and piers. The deeded plaintiffs assert these rights by virtue of their deeds, which establish them as fee owners of land to the water's edge. The non-deeded plaintiffs assert these rights by virtue of easements that give them right of way from their lot lines to the water line.

Riparian rights are special privileges accorded to owners of shoreland real estate, which permit them to access and use the water and to construct piers, docks, and similar structures. *Sea View Ests. Beach Club, Inc. v. State Dep't of Nat. Res.*, 223 Wis. 2d 138, 588 N.W.2d 667 (Ct. App. 1998). Owners of shoreland abutting natural waterways are presumptively entitled to riparian rights, so their deeds do not need to expressly convey them. *Mayer v. Gruber*, 29

8

Wis. 2d 168, 174, 138 N.W.2d 197 (1965). But the presumption of riparian rights doesn't apply to owners of shoreland abutting artificial bodies of water; these owners have only those rights expressly conveyed by their deeds. *Id.* at 177.

The government contends that plaintiffs' riparian rights claims fail as a matter of law because Bluff Slough is a man-made flowage. A flowage is a body of water formed by damming a navigable body of water such as a river. *See Movrich v. Lobermeier*, 2018 WI 9, ¶ 9, 379 Wis. 2d 269, 905 N.W.2d 807. In *Movrich*, the Wisconsin Supreme Court held that the owner of shoreland abutting a flowage did not have riparian rights to construct and maintain a pier over privately owned waterbed in the flowage. *Id.* ¶¶ 34–39. The court reasoned that a fee simple owner of the waterbed of a flowage "enjoys the basic right to exclude others," and that extending riparian rights to owners of waterfront property along flowages would infringe on the right to exclude. *Id.* ¶¶ 51–52.

In their response brief, plaintiffs do not dispute that Bluff Slough is a flowage, nor do they attempt to distinguish *Movrich*. Instead, they argue that Wisconsin common law granted riparian rights to owners of properties abutting flowages before *Movrich*, and that the Wisconsin Legislature restored those rights via statute in 2021, overruling *Movrich*. *See* Wis. Stat. § 30.132(2). On reply, the government argues that § 30.132 doesn't help plaintiffs because the United States acquired title to the disputed property before 2021, so *Movrich* governs, not § 30.132.

The government is correct: *Movrich*, not § 30.132, applies to plaintiffs' riparian rights claims. The United States acquired title to the waterbed at issue in 2005 and 2006, before *Movrich* was decided in 2018, and before § 30.132 went into effect in 2021. But there is a general presumption that civil judicial decisions apply retroactively. *Matter of Commitment of*

9

*M.R.M.*, 2023 WI 59, ¶ 10, 408 Wis. 2d 316, 992 N.W.2d 809. Statutes that affect substantive rights, on the other hand, generally apply only prospectively unless the legislature expressly states that they apply retrospectively. *In re Commitment of Hager*, 2018 WI 40, 381 Wis. 2d 74, 911 N.W.2d 17. Section 30.132 affects substantive property rights and contains no express statement of retroactivity, so it doesn't extinguish the United States' right to exclude plaintiffs from maintaining docks and piers over the waterbed.

The non-deeded plaintiffs also assert that Wis. Stat. § 30.131 permits them to maintain their piers and docks even if their easements do not grant them riparian rights. Section 30.131 states that a wharf or pier placed by a non-riparian owner with an easement to use the shore "may not be considered an unlawful structure" on the ground that it was not placed by the owner of the underlying riparian land. But § 30.131 doesn't create affirmative property rights; it simply clarifies that structures maintained and placed by non-riparian owners are not unlawful from a state regulatory perspective; that is, "not a violation of state statutes regulating" wharves and piers. *Ellingsworth v. Swiggum*, 195 Wis. 2d 142, 151, 536 N.W.2d 112 (Ct. App. 1995). Plaintiffs cannot rely on § 30.131 as a basis for a Quiet Title Act claim.

In sum, Bluff Slough's status as a man-made flowage means that both the deeded and non-deeded plaintiffs lack riparian rights that would allow them to contest the United States' title in the waterbed. The court will dismiss counts one and three of the amended complaint. Plaintiffs may not further amend their complaint for these claims, because it is clear from the complaint and from plaintiffs' response brief that amendment would be futile.

### 2. Adverse possession

The Quiet Title Act explicitly disallows claims against the United States based on adverse possession, unless plaintiffs acquired title through adverse possession before the United

10

States purchased the property. 28 U.S.C. § 2409a(n); *Hoyt v. Benham*, 813 F.3d 349, 353 (7th Cir. 2016). That's what plaintiffs allege here.

To plead a claim for adverse possession, plaintiffs must allege "actual continued occupation" of real property "under claim of title, exclusive of any other right" for a period of 20 years. Wis. Stat. § 893.25(2)(a); *see also Wilcox v. Est. of Hines*, 2014 WI 60, ¶¶ 19–20, 355 Wis. 2d 1, 849 N.W.2d 280. In addition to actual occupation, the property must also be "protected by a substantial enclosure" or "usually cultivated or improved." Wis. Stat. § 893.25(2)(b). The enclosure or improvement requirement is flexible, but it requires the plaintiff to show "some indication of the boundaries of adverse possession" sufficient to give the true owner notice of the adverse possession. *Kruckenberg v. Krukar*, 2017 WI App 70, ¶ 9, 378 Wis. 2d 314, 903 N.W.2d 164.

Because plaintiffs seek to quiet title under the Quiet Title Act, they are subject to a heightened pleading standard: they must plead "with particularity" the nature of the property interest they claim and the circumstances under which they acquired that interest. 28 U.S.C. § 2409a(d). In the context of their adverse possession claims, this means that they must specifically describe the circumstances establishing each element of adverse possession. *See McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013) (pleading with particularity requires alleging the relevant circumstances in detail).

Plaintiffs assert in counts four and five of the amended complaint that they have acquired title via adverse possession to the waterbed beneath their docks and piers and to the shoreline and the use of the water to the line of navigation. As explained below, these claims must be dismissed because plaintiff has not pleaded each of the elements of adverse possession with particularity.

### a. Adverse possession of waterbed beneath docks and piers

The factual basis for plaintiffs' adverse possession of the waterbed beneath their docks and piers is similar for each plaintiff. In the amended complaint, each plaintiff alleges that they, "along with their predecessors in interest, have been maintaining a dock and/or pier on their property and/or have been using the adjacent underlying submerged land from the water's edge to the line of navigation continuously" for at least 20 years. Dkt. 8, ¶¶ 15, 17.

The government contends that these allegations fail to state a claim for adverse possession because (1) plaintiffs don't identify the footprints of their docks and piers, so they haven't alleged with particularity the specific submerged land they're claiming; (2) plaintiffs allege that they have maintained docks "and/or" used the underlying submerged land, so they haven't alleged continuous, exclusive possession; (3) plaintiffs don't identify their predecessors-in-interest or provide any title history, so they can't rely on their predecessors' possession to establish the requisite 20 years of adverse possession; and (4) plaintiffs don't allege that they complied with applicable permitting requirements in installing and maintaining their docks and piers.

The government's first and fourth arguments are unpersuasive. As for the footprints of the docks and piers, plaintiffs have attached GIS maps to their amended complaint, which identify the location of the docks and piers at issue. Dkts. 19-13, 19-14, 19-26. These maps are more than sufficient to notify the government about what land is disputed, which is all that is needed to satisfy the heightened pleading requirement under the Quiet Title Act. *See McMaster*, 177 F.3d at 897. As for compliance with permitting requirements, this is not an element of adverse possession. The government cites *McMaster*, in which the Ninth Circuit held that the plaintiff had failed to plead title to a cabin and other structures located on a mining

claim in part because he had not alleged compliance with applicable permitting requirements. *Id.* at 898. But that mattered in *McMaster* because under the property law at issue in that case, title would have passed to the United States if plaintiff had failed to comply with permitting requirements. *Id.* The same is not true here.[1]

The government's other arguments have merit. Plaintiffs' allegations that they have maintained docks and piers "and/or" used the underlying submerged land does not establish continuous, exclusive use. Continuously maintaining a structure such as a dock or pier is enough to establish continuous, exclusive use. *Kelley v. Salvas*, 146 Wis. 543, 131 N.W 436, 438. But plaintiffs have not alleged that they continuously maintained docks or piers for 20 years; they have alleged that they maintained docks and piers *and/or* used the underlying submerged land in unspecified ways. Plaintiffs can't establish exclusive possession by simply *using* the waterbed. *Id.* at 438 (use of waterbed for regular recreational boating was not exclusive possession). Nor are plaintiffs' allegations that they used the waterbed enough to meet the requirement that an adversely possessing party install a "substantial enclosure" or "usually cultivate[] or improve" the property. Wis. Stat. § 893.25. Elsewhere in the amended complaint, plaintiffs allege that they have cultivated or improved the waterbed by installing riprap, constructing stairs and decks, and landscaping. Dkt. 19, ¶ 29. But they don't say when and where they made these improvements, which they need to establish the requisite 20-year requirement and the geographical dimensions of the property they're claiming.

---

[1] The government also cites *Zeisler Corp. v. Page*, 24 Wis. 2d 190, 128 N.W.2d 414 (1964), in which the court found that the plaintiff's failure to obtain a permit to fill in the bed of a navigable river "cast doubt" on her adverse possession claim over the land she filled. *Id.* at 198. But the plaintiff's adverse possession claim in *Zeisler* failed for other reasons. *Zeisler* does not hold that a plaintiff claiming adverse possession must affirmatively plead compliance with applicable permitting requirements.

The amended complaint also doesn't adequately allege the time requirement for adverse possession for most of the plaintiffs. Only two of the plaintiffs, the Mitbys and the Amundsens, acquired their property more than 20 years before the United States purchased the waterbed. To meet the 20-year time requirement, the other plaintiffs must "tack" their period of adverse possession with periods of adverse possession by their predecessors-in-interest. *Perpignani v. Vonasek*, 139 Wis. 2d 695, 724–25, 408 N.W.2d 1 (1987). But the amended complaint doesn't name the predecessors or include any details establishing that they were in privity with the plaintiffs or that their use of the waterbed was adverse to the previous owners of the waterbed.[2] *See id.* And other than plaintiff Thomas, who states that the "Zielkes' original boathouse still floats in front" of his property, Dkt. 19, ¶ 15(b)(iii), plaintiffs don't allege that the docks and piers maintained by the predecessors are the same docks and piers maintained by the plaintiffs or that they are in the same physical location over the waterbed. Without these allegations, plaintiffs have not pleaded with particularity continuous adverse possession for 20 years based on tacking with their predecessors-in-interest.

The remaining question is whether to give plaintiffs leave to replead this claim. In its reply brief, the government contends that plaintiffs may have foreclosed their adverse possession claims because they state multiple times in their response brief that the Zielkes, who owned the waterbed before the United States, did not prevent plaintiffs from installing docks and piers. Dkt. 25, at 16 ("the Zielkes . . . never precluded the waterfront property owners from placing and maintaining their piers and docks"); at 20 ("all non-Deeded plaintiffs . . . used

---

[2] Plaintiffs do name some of the predecessors-in-interest and include details about when they installed their docks in their response brief, Dkt. 25, at 24–25. But these new allegations are still insufficient, because plaintiffs don't allege that the docks have been continuously present or that they have been in the same location for the full 20 years.

14

and maintained piers or docks on Bluff Slough—without objection from the Zielkes"); at 26 ("at no point did the Zielkes object to Plaintiffs placing piers and docks in Bluff Slough"). The government argues that plaintiffs have foreclosed a finding of hostile use by alleging that the Zielkes gave them permission to place their docks and piers. The government is correct that permission defeats a claim for adverse possession. *Fabry v. Jagiello*, 2019 WI App 21, ¶ 20, 386 Wis. 2d 630, 927 N.W.2d 931. But plaintiffs did not say that the Zielkes gave them permission to place docks and piers; they said that the Zielkes did not object to the docks and piers. This is not permission, but acquiescence, which does not defeat a claim for adverse possession. *Id.* ¶ 21. Plaintiffs have not foreclosed their adverse possession claims and could amend their complaint to state a viable claim for adverse possession of the waterbed beneath their docks and piers. The court will give them an opportunity to do so.

### b. Adverse possession of shoreline and waterbed to the line of navigation

The non-deeded plaintiffs also allege that they have adversely possessed the shoreline and the waterbed to the line of navigation. They contend that they have satisfied the requirement of actual, exclusive, and continuous occupation because they engaged in fishing, boating, and other recreational activities throughout the year, and they "usually cultivated" the waterbed by constructing stairs, installing riprap, landscaping, and dredging.

The government contends that plaintiffs' claims are foreclosed by *Kelley v. Salvas* to the extent that they rely on recreational use of the water to establish exclusive and continuous occupation. 131 N.W. at 437–38. In that case, the court held that Salvas could not establish adverse possession of a waterbed based on recreational boating because that was not an exclusive use of the waterbed. *Id.* Plaintiffs don't meaningfully address this part of *Kelley* in their response brief. The court agrees that *Kelley* applies, so it will dismiss plaintiffs' adverse

possession claims based on use of the waterbed for recreational activities. Because *Kelley* forecloses these claims as a matter of law, plaintiffs may not amend their complaint with regard to these claims.

Plaintiffs may still be able to assert that they adversely possessed the parts of the shoreline and waterbed where they have constructed stairs, installed riprap, landscaped, and dredged. But they must identify the specific location of the improvements, and they must allege when their possession began. The court will dismiss these claims but will give plaintiffs an opportunity to amend.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss plaintiffs' amended complaint, Dkt. 21, is GRANTED.

2. Plaintiffs are GRANTED leave to amend their complaint to plead facts showing adverse possession of (1) the waterbed beneath their docks and piers, and (2) the waterbed where they have constructed stairs and other improvements, installed riprap, landscaped, and dredged. Plaintiffs may have until September 12, 2024, to amend the complaint.

3. Plaintiffs' other claims are DISMISSED with prejudice.

4. Defendant U.S. Fish and Wildlife Service is DISMISSED from the case.

5. If plaintiffs do not file an amended complaint by September 12, the court will dismiss the complaint with prejudice and direct the clerk of court to close the case.

Entered August 22, 2024.

                               BY THE COURT:

                               /s/

                               _____
                               JAMES D. PETERSON
                               District Judge