IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD K. THOMAS, EUGENE E. MITBY,
JUDITH J. MITBY, MARY J. SULLIVAN, HEIDI A.
WEINBERGER, DIANE K. WALLESER, STACY A.
MITBY, RICHARD A. AMUNDSEN, GEORGIA M.
AMUNDSEN, DOUGLAS M. ZUEGE, ELIZABETH A.
ZUEGE, HB HOLDINGS LLC, KIRK N. FRIEDLINE,
and WOODBRIDGE CONDOMINIUM                                 OPINION and ORDER
ASSOCIATION, INC.,
                                                                  23-cv-406-jdp
                            Plaintiffs,

    v.

UNITED STATES OF AMERICA,

                            Defendant.

---

       Plaintiffs, owners of residential waterfront property along the Mississippi River near La Crosse, Wisconsin, seek to quiet title against the United States as to a portion of waterbed where they maintain docks and piers. The government, which purchased the waterbed, wants plaintiffs to remove the docks and piers, but plaintiffs assert that they have property rights under Wisconsin law that allow them to keep the docks and piers in the river.

       The court previously dismissed plaintiffs' amended complaint, but it gave plaintiffs leave to replead their claims for adverse possession of the waterbed beneath their docks and piers and the waterbed along the shoreline where they had made improvements. Dkt. 31. Plaintiffs filed a second amended complaint, in which they repleaded their claims for adverse possession and, for two of the plaintiffs, added new claims for implied easement. Dkt. 32.

       The government now moves to dismiss plaintiffs' second amended complaint in part, contending that all plaintiffs except Eugene and Judith Mitby, Douglas and Elizabeth Zuege, and Mary Sullivan still failed to adequately plead adverse possession of the waterbed under

their docks and piers, and that all plaintiffs failed to adequately plead adverse possession of the shoreline. The government also asks the court to dismiss plaintiffs' new implied easement claims, both because they are untimely and because they fail as a matter of law.

The court will grant the government's motion as to the implied easement claims, because an easement to maintain docks is not necessary for plaintiffs to use their property. As for the adverse possession claims, the court concludes that the Mitbys, the Zueges, Sullivan, Richard and Georgia Amundsen, Stacy Mitby, and HB Holdings, LLC have adequately pleaded adverse possession over the waterbed where their docks are located, and that the Mitbys, the Amundsens, Sullivan, Stacy Mitby, and Kirk Friedline have adequately pleaded adverse possession over at least a portion of the shoreline. The remaining claims will be dismissed and plaintiffs Richard Thomas, Heidi Weinberger, Diane Walleser, and Woodbridge Condominium Association will be removed from the case.

ALLEGATIONS OF FACT

Plaintiffs are eleven residential owners of property along the Mississippi River near La Crosse, Wisconsin. Two of the plaintiffs, Richard Thomas and Woodbridge Condominium Association, own shoreline property directly abutting the river. The other plaintiffs own property near, but not directly on the shoreline. Plaintiffs' parcels were previously part of two larger parcels, one owned by Clarence and Elinor Zielke, and the other owned by the Catholic Diocese of La Crosse. The Zielkes and the Catholic Diocese also owned the submerged waterbed adjacent to their parcels.

The Zielkes and the Catholic Diocese installed structures in the river when they owned the property, including a boathouse and a dock. Once the tracts were subdivided into

2

residential parcels, the owners of those parcels, including plaintiffs, also installed and maintained docks and piers, and improved the shoreline by landscaping, installing riprap, and constructing stairs and gangplanks.

In 2005 and 2006, the United States purchased two submerged parcels of waterbed from the Zielkes and the Catholic Diocese. Years later, the government commissioned a survey of its submerged parcels, discovered plaintiffs' docks and piers, and demanded that plaintiffs remove them. Plaintiffs responded with this lawsuit to quiet title to the waterbed underneath their docks and piers.

ANALYSIS

A. Adverse possession

The Quiet Title Act explicitly disallows claims against the United States based on adverse possession unless plaintiffs acquired title before the United States purchased the property. 28 U.S.C. § 2409a(n); *Hoyt v. Benham*, 813 F.3d 349, 353 (7th Cir. 2016). The United States bought the waterbed at issue in this case in 2005 and 2006. Plaintiffs allege that they adversely possessed the disputed property before then.

To plead a claim for adverse possession, plaintiffs must allege facts suggesting "actual continued occupation" of real property "under claim of title, exclusive of any other right" for a period of 20 years. Wis. Stat. § 893.25(2)(a); *see also Wilcox v. Est. of Hines*, 2014 WI 60, ¶¶ 19–20, 355 Wis. 2d 1, 849 N.W.2d 280. In addition to actual occupation, the property must be "protected by a substantial enclosure" or "usually cultivated or improved." Wis. Stat. § 893.25(2)(b). Because plaintiffs seek to quiet title under the Quiet Title Act, they must plead "with particularity," meaning that they must specifically describe the facts establishing each

3

element of adverse possession. 28 U.S.C. § 2409a(d); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013).

Plaintiffs allege that they adversely possessed the waterbed underneath their docks and piers. The plaintiffs whose properties don't directly abut the shoreline also allege that they adverse possessed the shoreline between their lot lines and the water's edge.

1. **Adverse possession of waterbed underneath docks and piers**

In count one of the second amended complaint, plaintiffs assert that they adversely possessed the waterbed underneath their docks and piers. The government doesn't challenge these claims for Eugene and Judith Mitby, Mary Sullivan, and Douglas and Elizabeth Zuege, so those claims will proceed. In their response brief, plaintiffs withdrew the adverse possession claims for Richard Thomas, Woodbridge Condominium Association, and Kirk Friedline, so the court will dismiss those claims.

That leaves Heidi Weinberger, Diane Walleser, Stacy Mitby, Richard and Georgia Amundsen, and HB Holdings. Each of these plaintiffs has a dock that has been replaced since 1985, when the 20-year period of adverse possession began. The new docks sit in the same location as the historical docks, but they are a different shape or size. The government contends that plaintiffs cannot satisfy the element of continuous occupation because the new docks don't cover the same footprint as the historical docks. The government also contends that plaintiffs haven't pleaded their adverse possession claims with particularity.

The government's continuous occupation argument boils down to a dispute about the boundaries of plaintiffs' adverse possession claims. A plaintiff asserting adverse possession only acquires title over the portion of land occupied for the full 20-year period. *See Knutson v. Munson*, 207 Wis. 248, 240 N.W. 542, 544 (1932). If the boundary line of the occupied land

4

moves during the 20-year period, then the plaintiff only acquires title over the portion that was continuously occupied for the full time. *Id.* (concluding that when a fence was moved during the 20-year period, the plaintiff may not have acquired title to the land between the original and new location).

The government is correct that the footprint of the historical docks will matter in determining the boundaries of the waterbed plaintiffs adversely possessed. None of these plaintiffs had their current docks for twenty years prior to the United States' acquisition, so the boundaries of the waterbed they acquired would be either the footprint of the historical dock (if that dock was in place for the entire 20-year period) or the overlap between the historical and current dock (if it was replaced during the 20-year period).

But it doesn't follow that plaintiffs' claims must be dismissed. The government's arguments about the dimensions of the docks are relevant to the precise boundaries of the land that plaintiffs may have acquired, but they don't call into question the claims themselves. Each of the plaintiffs alleges that at least a portion of the waterbed was covered by a dock for the full 20 years, so they have satisfied the continuous occupation element.

The next issue is whether plaintiffs' allegations are sufficiently detailed to state a claim under the Quiet Title Act's heightened pleading standard, which requires plaintiffs to plead "with particularity" the property interest they are asserting, the circumstances under which they acquired that interest, and the interest asserted by the United States. 28 U.S.C. § 2409a(d). The government contends that plaintiffs' failure to allege the size and location of the historical docks means that they haven't sufficiently identified their property interest.

The Seventh Circuit has not decided what it means to plead with particularity in the context of the Quiet Title Act. But in the context of Federal Rule of Civil Procedure 9(b),

5

particularized pleading requires plaintiffs to provide precise details of the "who, what, when where, and how" of their claim, so that plaintiffs are encouraged to conduct a thorough pre-suit investigation and defendants are given enough information to respond. *See, e.g., United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016), *see also McMaster v. United States*, 731 F.3d 881 (9th Cir. 2013) (analyzing particularized pleading requirement under Quiet Title Act using the same standard as Rule 9(b)).

Here, the Amundsens, HB Holdings, and Stacy Mitby have adequately pleaded their property interest. They didn't provide the exact dimensions of their historical docks, but they each alleged that the historical docks were in the same location as their current docks. Dkt. 32, ¶¶ 23–24 (the Amundsens' current dock is in the "same location" as the historical dock); ¶ 30 (the Amundsen rental property's current dock is mounted on the same spud pipes as the historical dock); ¶ 67 (Stacy Mitby's current dock sits "mostly within the footprint of" the historical dock); ¶ 108 (HB Holdings' current dock is in the "same location" but has "different dimensions" than the historical dock). These allegations adequately inform the government what portion of the waterbed is disputed and why and allow it to prepare a response and seek appropriate discovery.

As for the Amundsens, the government also contends that their allegations are insufficient because an exhibit showing all the other plaintiffs' docks, Dkt. 32-13, doesn't show the Amundsens' dock. But the Amundsens don't say that this exhibit shows the location of their dock, and the court is not convinced that they need to provide a map showing where their dock is. The complaint identifies the Amundsens' lot, provides the size of the current dock, and states that the Amundsens have installed stairs and a gangplank to access the dock. This information is more than sufficient to notify the government where the Amundsens' dock is.

6

As for Weinberger's and Walleser's claims, there is a problem. These plaintiffs bought their properties in the late 1980s or early 1990s from Patrick Maney, who constructed a single dock in 1985 that was shared by the two properties later purchased by Weinberger and Walleser. The original Maney dock is still located on Weinberger's property, and Weinberger alleges that, "upon information and belief, the location where Weinberger's dock sits overlaps in part with where the dock originally sat in 1985." Dkt. 32, ¶ 86. As for Walleser, she constructed her own dock after she bought the property, and she alleges that "upon information and belief," her new dock "overlaps in part with where the original dock sat." *Id.* ¶ 79.

These allegations fall short of the particularized pleading standard. Allegations made upon information and belief are insufficient to state a claim with particularity, unless the facts underlying the allegation are not accessible to the plaintiff and the plaintiff provides the reasons behind her suspicions. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir. 1992)). Neither is true here. Walleser and Weinberger purchased their properties from Maney, so they are in a better position than the government to know whether the location of their current docks overlaps with Maney's old dock. And Walleser and Weinberger provide no explanation for why they suspect, but do not know for certain, that the location of their current docks overlaps with the location of Maney's dock. The court will dismiss Walleser and Weinberger's adverse possession claims related to the waterbed beneath their docks.

2. **Adverse possession of shoreline**

In count two of the second amended complaint, the plaintiffs whose property doesn't directly abut the shoreline assert that they have adversely possessed the shoreline between their lot lines and the water's edge. The government contends that these plaintiffs' claims fail

7

because they didn't identify the specific location of their improvements to the shoreline, didn't allege usual cultivation or improvement of the entire shoreline, or didn't allege continuous occupation for the full 20-year period.

The court concludes that Eugene and Judith Mitby, Richard and Georgia Amundsen, Stacy Mitby, Mary Sullivan, and Kirk Friedline have adequately alleged adverse possession of the shoreline between their lot lines and the water's edge. These plaintiffs say that they or their predecessors installed tangible structures on the shoreline, including stairs, sheds, gangplanks, and rip rap, which remained for at least 20 years before the government acquired the property. Dkt. 32, ¶¶ 25; 28; 31 (Amundsens); ¶¶ 40–41 (Mitbys), ¶¶ 54–56 (Sullivan); ¶ 64 (Stacy Mitby); ¶¶ 93–96 (Friedline). They also say that they made other improvements to the shoreline, such as landscaping, controlling erosion, and maintaining a path.

The government challenges these five plaintiffs' shoreline adverse possession claims on two grounds, neither of which is persuasive. First, the government contends that plaintiffs didn't plead with particularity because they didn't identify the specific locations where they built structures like stairs, sheds, gangplanks, and rip rap. Dkt. 36, at 17–18 (citing *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 107-cv-00414, 2010 WL 1342914 (E.D. Cal. Apr. 5, 2010)). But plaintiffs have described the structures in detail, provided their general location, and in the case of the Mitbys and Sullivan, provided pictures of the structures. That is more than enough to allow the government to identify the structures.

In their reply brief, the government cites *Board of Commissioners of Catron County, New Mexico v. United States,* arguing that even if the structures are easily identifiable, plaintiffs must plead the specific locations of the structures in the complaint. 934 F. Supp. 2d 1298 (D.N.M. 2013)). In *Catron County*, the plaintiff brought a Quiet Title Act claim asserting right-of-way

8

over a portion of road in a national forest. The court dismissed the complaint because the plaintiff failed to allege where its right-of-way started and ended, which was necessary to establish the boundaries of the disputed property. *Id.* at 1307. The plaintiff argued that "the parties to this litigation know the details of the road that is at issue," but the court rejected that argument, holding that under the Quiet Title Act, the boundaries of the disputed property needed to be clear from the complaint alone. *Id.* at 1307–08. But *Catron County* is not instructive because plaintiffs in this case have identified the boundaries of the disputed property: plaintiffs say in the complaint that they have adversely possessed "the shore lying between [their] lot line and the water's edge." *E.g.*, Dkt. 32, ¶ 60. The precise locations of plaintiffs' structures aren't necessary to define the boundary of the disputed property, so plaintiffs don't need to plead the precise locations of those structures in the complaint.

Second, the government contends that the five plaintiffs didn't adequately allege that they "usually cultivated or improved" the entire shoreline. Wis. Stat. § 893.25(2)(b)2. Usual cultivation or improvement means that the adverse possessor uses the land in a way that would notify a reasonably diligent owner of the adverse possession. *Pierz v. Gorski*, 88 Wis. 2d 131, 137–39, 276 N.W.2d 352 (Ct. App. 1979). Improvements to undeveloped land will generally suffice only if they "substantially change the character of the land." *Id.* at 137; *compare Burkhardt v. Smith*, 17 Wis. 2d 132, 115 N.W.2d 540 (1962) (adverse possession when possessor cleared brush, burned out stumps, and seeded land with grass, turning wild land into a house and yard) *with Pierz*, 88 Wis. 2d at 137–39 (no adverse possession when plaintiff cleared some brush, sprayed for poison ivy, and planted trees, but the land remained mostly undeveloped).

The government argues that most of the shoreline area remains undeveloped, despite plaintiffs' allegations that they landscaped, maintained a path, and improved the area by

9

controlling erosion. But the court will not dismiss plaintiffs' adverse possession claims on this basis. The government's argument amounts to a dispute over how much of the shoreline plaintiffs have adversely possessed, which is a fact-intensive inquiry more appropriate for summary judgment than a motion to dismiss. *See Burkhardt*, 17 Wis. 2d at 134 (adverse possession found only after trial in which parties introduced detailed evidence of possessor's activities on the land). Plaintiffs say that they built and maintained structures on at least a portion of the shoreline for the requisite 20 years, so they have adequately alleged adverse possession over at least a portion of the shoreline. How much of the shoreline they possessed is a question for another day.

The court will dismiss the shoreline adverse possession claims for Diane Walleser, Douglas and Elizabeth Zuege, Heidi Weinberger, and HB Holdings. Walleser and the Zueges have failed to allege 20 years of continuous possession. Walleser alleges that she adversely possessed the shoreline by constructing stairs and a gangplank, which allow her to access her dock. But Walleser says that she constructed the stairs and gangplank in 1990, which is less than 20 years before the government acquired the property. *Id.* ¶ 77. Walleser says that her predecessor also built stairs, a gangplank, and riprap on the shoreline in 1985, but she doesn't say whether the riprap was there for the requisite 20 years, and she affirmatively alleges that the stairs and gangplank were moved before the 20 years were up. *Id.* ¶¶ 74–75; 78. Similarly, the Zueges say that their predecessor installed a gangplank on the shoreline in 1983 or 1984 and that the gangplank "remained" when the Zueges purchased the property in 1993. *Id.* ¶¶ 100–01. But they don't say whether the gangplank remained after 1993, so they haven't alleged continuous possession for the full 20 years.

As for Weinberger, the government contends that her use of the shoreline was not adverse: her deed contains an easement giving her right-of-way to use the shoreline and her use was consistent with that easement. Plaintiffs did not address this in their response brief, so they have forfeited the issue. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). The court will dismiss Weinberger's claim for adverse possession of the shoreline.

As for HB Holdings, its shoreline adverse possession claims fail because HB Holdings simply hasn't alleged anything about the shoreline. All of HB Holdings' allegations concern the submerged waterbed beneath its dock, Dkt. 32, ¶¶ 104–10, so there are no factual allegations to support a claim for adverse possession of the shoreline.

The remaining question is whether to allow the plaintiffs whose claims have been dismissed to replead their adverse possession claims. The court will not allow another round of amendment. Plaintiffs have now amended their complaint twice, and this court's previous order described in detail the problems plaintiffs needed to correct, so further amendment would be futile. *See Wade v. Hopper*, 993 F.2d 1246, 1248–49 (7th Cir. 1993). The court will remove Weinberger and Walleser as plaintiffs because all of their claims have now been dismissed.

## B. Implied easement

In count three of the second amended complaint, plaintiffs Thomas and Woodbridge Condominium Association bring an implied easement claim, asserting that they cannot enjoy their property without an easement to use their docks and boathouse. The court will dismiss these claims. Implied easements are disfavored under Wisconsin law; they exist only by "necessity . . . so clear and absolute that without the easement the [property owner] cannot enjoy the use of the property granted to him for the purposes to which similar property is customarily devoted." *Bullis v. Schmidt*, 5 Wis. 2d 457, 462, 93 N.W.2d 476 (1958). The docks

11

and boathouse likely increase the enjoyment that Thomas and the Woodbridge Condominium owners derive from their land, but the loss of those things would not completely prevent them from using their properties for residential and recreational purposes. The fact that they have waterfront property does not change the analysis; access to the water via on-site docks and piers is still not a "clear and absolute" necessity for plaintiffs to live on and enjoy their property. Thomas and Woodbridge Condominium Association have conceded their adverse possession claims, so the dismissal of count three resolves all of their claims and the court will remove them as plaintiffs.

ORDER

IT IS ORDERED that:

1. Defendant United States of America's motion to dismiss plaintiffs' second amended complaint, Dkt. 35, is GRANTED in part. The waterbed adverse possession claims are dismissed for plaintiffs Richard Thomas, Heidi Weinberger, Diane Walleser, Kirk Friedline, and Woodbridge Condominium Association. The shoreline adverse possession claims are dismissed for plaintiffs Weinberger, Walleser, Douglas and Elizabeth Zuege, and HB Holdings, LLC. The implied easement claims are dismissed in their entirety.

2. The government's motion to dismiss is otherwise DENIED.

3. Plaintiffs Thomas, Weinberger, Walleser, and Woodbridge Condominium Association are DISMISSED as plaintiffs.

Entered June 11, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge