IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUGENE E. MITBY, JUDITH J. MITBY,
MARY J. SULLIVAN, STACY A. MITBY,
RICHARD A AMUNDSEN, GEORGIA M.
AMUNDSEN, DOUGLAS M. ZUEGE,
ELIZABETH A. ZUEGE, KIRK FRIEDLINE,
and HB HOLDINGS, LLC,

OPINION and ORDER

Plaintiffs,

23-cv-406-jdp

v.

UNITED STATES OF AMERICA,

Defendant.

Plaintiffs own residential waterfront property along the Mississippi River near La Crosse, Wisconsin.[1] They seek to quiet title against the United States as to a portion of waterbed and shoreline where they maintain docks and other structures. The government, which owns the waterbed and shoreline, wants plaintiffs to remove the docks and structures. Plaintiffs assert that they have obtained property rights via the doctrine of adverse possession, which allow them to keep their docks and structures.

The government moves for summary judgment on most of plaintiffs' claims, contending that plaintiffs cannot show continuous possession for the requisite 20 years and cannot establish the boundaries of the adversely possessed land with reasonable accuracy. Dkt. 63.

---

[1] The parties filed a stipulation to voluntarily dismiss plaintiff Kirk Friedline's claims. Dkt. 62. When a party wishes to dismiss less than the entire action, the proper course is to file an amended pleading under Federal Rule of Civil Procedure 15(a) rather than a notice of dismissal under Rule 41. *See Taylor v. Brown*, 787 F. 3d 851, 857-58 (7th Cir. 2015). The court will construe the stipulation as a motion for leave to amend the complaint. So construed, the motion will be granted and Friedline will be dismissed. Plaintiffs do not need to file a new complaint.

The court will grant the government's motion as to plaintiffs Douglas and Elizabeth Zuege's and HB Holdings, LLC's claims over the waterbed where their docks sit, because those plaintiffs failed to adduce evidence that the docks were present for 20 continuous years before the government acquired the property. The court will also grant the motion as to some of plaintiff Mary Sullivan's shoreline claims, because she also failed to adduce evidence of continuous possession for the requisite time period. Plaintiffs' remaining claims will proceed to trial.

UNDISPUTED FACTS

The court begins with a brief overview of the undisputed facts relevant to all plaintiffs' adverse possession claims. The court will discuss the facts relevant to each plaintiff's specific claims in the analysis.

Plaintiffs own residential property on Oak Drive in La Crosse, Wisconsin. Oak Drive abuts a portion of the Mississippi River floodplain known as "Bluff Slough." Plaintiffs' parcels extend to the flowage line near the river, but not all the way to the shoreline.

Plaintiffs' parcels were previously part of two larger parcels, one owned by Clarence and Elinor Zielke, and the other owned by the Catholic Diocese of La Crosse. The Zielkes and the Catholic Diocese also owned the shoreline and submerged waterbed adjacent to their parcels. The Zielkes and the Catholic Diocese installed structures in the river when they owned the property, including a boathouse and a dock. Once the tracts were subdivided into residential parcels, the owners of those parcels, including plaintiffs, also installed docks, and some of them improved the shoreline by landscaping, installing riprap, and constructing stairs and gangplanks.

2

In 2005 and 2006, the United States purchased the waterbed and shoreline behind plaintiffs' properties, which became part of the Upper Mississippi National Wildlife and Fish Refuge. Years later, the government commissioned a survey of its submerged parcels, discovered plaintiffs' docks and other structures, and demanded that plaintiffs remove them. Plaintiffs responded with this lawsuit to quiet title to the waterbed beneath their docks and to the shoreline where they have structures and other improvements.

ANALYSIS

Plaintiffs seek to quiet title against the United States as to portions of the waterbed and shoreline behind their residential properties, which they say they own pursuant to the doctrine of adverse possession. Two motions are before the court. First, the government moves to exclude two former owners of plaintiffs' properties as witnesses, contending that plaintiffs failed to disclose them under Federal Rule of Civil Procedure 26. Dkt. 87. Second, the government moves for partial summary judgment on most of plaintiffs' adverse possession claims. The court begins with the evidentiary motion.

A.  Motion to exclude

To support some of their adverse possession claims, plaintiffs have provided declarations from the former owner of Stacy Mitby's property, Robert Goodno, Dkt. 82, and the former owner of one of Richard and Georgia Amundsens' properties, Albert Werner, Dkt. 76. The government moves to exclude Goodno and Werner as witnesses and to strike their declarations because plaintiffs did not disclose them under Federal Rule of Civil Procedure 26. Dkt. 87. The court concludes that plaintiffs did not violate Rule 26, so it will deny the motion.

Under Rule 26(a)(1), parties must affirmatively disclose the identity of each individual "likely to have discoverable information that the disclosing party may use to support its claims or defenses," as well as the subjects of the discoverable information. Parties also have an ongoing obligation to supplement their disclosures if they learn that they are incomplete or incorrect, unless "the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing." *See* Fed. R. Civ. P. 26(e)(1); *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004). A party that fails to make a required disclosure under Rule 26(a)(1) or Rule 26(e)(1) may not use the undisclosed information at trial, unless it can show that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851, 856–57 (7th Cir. 2003).

The government contends that plaintiffs violated Rule 26 because they did not disclose Goodno or Werner as potential witnesses when they submitted their initial disclosures in February 2024, nor did they identify those witnesses in a supplemental disclosure. But supplementation was not necessary here, because plaintiffs identified Goodno and Werner in their second amended complaint, so these witnesses were "otherwise made known to [defendant] . . . in writing." Fed. R. Civ. P 26(e)(1). As for Goodno, plaintiffs alleged that Goodno's parents owned Stacy Mitby's property from 1960 to 2013 and that they installed the dock, concrete stairs, and gang plank that formed the basis for her adverse possession claims. Dkt. 32, ¶¶ 63–66. They also alleged that Goodno, as personal representative of his mother's estate, sold the property to Stacy in 2013. *Id.* ¶ 62. As for Werner, plaintiffs alleged that he and his wife Loretta purchased a rental property in 1979 and installed a dock, gang plank, and stairs, which were still there when they sold the property to the Amundsens in 1987.

Dkt. 32, ¶¶ 26–28. In light of these allegations, it should have been no surprise to the government that Goodno or Werner might have discoverable information and that plaintiffs might offer their declarations in opposition to the government's motion for summary judgment. *See David*, 324 F.3d at 857.

Nevertheless, the government argues that the disclosure of Goodno and Werner was insufficient, for two reasons. First, the government argues that even if it knew Goodno and Werner's identities from the complaint, it didn't know what they might testify about. But plaintiffs alleged in the second amended complaint that Goodno and Werner were the former owners of plaintiffs' properties, so it seems obvious that their testimony would concern the docks and other structures and improvements that they or their neighbors installed while they were living there.

Second, the government argues that it did not know if Goodno or Werner were still alive and able to provide competent testimony. That argument makes little sense for Goodno, because in her deposition, Stacy Mitby testified that she had spoken to Goodno about this case and that Goodno had provided her and her counsel with relevant information. Dkt. 71 (Stacy Mitby Dep. 9:20–10:15; 15:18–19).

The government's argument has more traction for Werner, because during Richard Amundsen's deposition, the government asked Richard, "[a]re the Werners still living?" and Richard answered, "I don't think so." Dkt. 69 (Richard Amundsen Dep. 36:14–15). Rule 26's disclosure requirement can be satisfied if a party identifies a potential witness in a deposition, *Gutierrez*, 382 F.3d at 732–33, so it makes some sense that if a party represents during a deposition that a potential witness is deceased, the opposing party might be entitled to rely on that representation. But the court need not resolve that question here, because Richard did not

actually represent in his deposition that Werner was deceased. Richard's testimony—"I don't think so"—suggests that he had no personal knowledge either way about whether Werner was still living. The bottom line is that plaintiffs clearly identified Werner in their second amended complaint as a potential witness, and nothing that Richard said afterward changed that.[2] That means that the government had more than a year to locate Werner and seek his deposition if it wanted to do so.

## B. Motion for partial summary judgment

Plaintiffs are suing the United States under the Quiet Title Act, asserting that they have obtained title through adverse possession to the portions of the waterbed and shoreline where they have installed docks, gangplanks, and stairs, and made other improvements to the land. The Quiet Title Act waives sovereign immunity for suits against the United States to adjudicate title to real property, but it does not actually confer any property rights; for that, plaintiffs must look to state law. 28 U.S.C. § 2409a; *Hoyt v. Benham*, 813 F.3d 349, 353 (7th Cir. 2016) (applying Indiana law to claim for easement brought under Quiet Title Act). The plaintiffs in this case rely on the Wisconsin-law doctrine of adverse possession. Wis. Stat. § 893.25. The Quiet Title Act disallows claims against the United States based on adverse possession unless plaintiffs acquired title before the government acquired the property. 28 U.S.C. § 2409a(n).

---

[2] Rule 26(a)(1)(A) also requires plaintiffs to disclose, "if known, the address and telephone number" of each potential witness. The government doesn't contend in its brief that plaintiffs needed to separately disclose that information. And in any event, the court would find any failure to disclose that information harmless, because as plaintiffs point out, Werner's address was readily available online via La Crosse County's publicly available real estate records portal. *See* https://pp-lacrosse-co-wi-fb.app.landnav.com/Search/RealEstate/Search.

The government purchased the disputed property in this case in 2005 and 2006, so plaintiffs must show that they satisfied all the elements of adverse possession before then.[3]

Adverse possession under Wisconsin law requires "actual continued occupation" of property "under claim of title, exclusive of any other right" for a period of 20 years. Wis. Stat. § 893.25(2)(a); *see also Wilcox v. Est. of Hines*, 2014 WI 60, ¶¶ 19–20, 355 Wis. 2d 1, 849 N.W.2d 280. The property must also be "protected by a substantial enclosure" or "usually cultivated or improved" in a sufficiently visible manner as to notify the true owner of the adverse possession.  Wis. Stat. § 893.25(2)(b); *Burkhardt v. Smith*, 17 Wis. 2d 132, 138 115 N.W.2d 540 (1962). A plaintiff seeking to obtain title by adverse possession must demonstrate each element of his claim by "clear and positive" evidence. *Wilcox*, 2014 WI 60, ¶ 20. The plaintiff also bears the burden of defining the boundaries of the adversely occupied land. *Droege v. Daymaker Cranberries, Inc.*, 88 Wis. 2d 140, 146, 276 N.W.2d 356 (Ct. App. 1979). "[A]bsolute precision or utilization of a surveyor is not required to establish lines of occupancy, [but] the evidence must provide a reasonably accurate basis upon which the trial court can partition the land." *Id.*

In this case, all of the plaintiffs assert that they have obtained title to the waterbed beneath their docks and gangplanks through adverse possession. Eugene and Judith Mitby, Mary Sullivan, Stacy Mitby, and Richard and Georgia Amundsen also assert that they have obtained title to portions of the shoreline through adverse possession. (Plaintiffs Douglas and

---

[3] The United States purchased some of the land in 2005 and the rest in 2006. But all of the plaintiffs say that their possession began before 1985, so it doesn't matter which portions of the waterbed were purchased in which year.

Elizabeth Zuege and HB Holdings, LLC's shoreline claims were dismissed in a previous order. Dkt. 47.) The government moves for partial summary judgment on plaintiffs' claims, as follows:

|  | Waterbed claims | Shoreline claims |
|---|---|---|
| Douglas & Elizabeth Zuege | X | *Previously dismissed* |
| HB Holdings, LLC | X | *Previously dismissed* |
| Mary Sullivan | X | X |
| Eugene & Judith Mitby | X | *Not moving* |
| Richard & Georgia Amundsen – residence | X | *Not moving* |
| Richard and Georgia Amundsen – rental property | X | X |

The government contends either that plaintiffs cannot demonstrate continuous possession for 20 years, or that they cannot establish the boundaries of the adversely possessed property with reasonable accuracy.

### 1. Douglas and Elizabeth Zuege and HB Holdings, LLC

Douglas and Elizabeth Zuege own 2736 Oak Drive, which they purchased in 1993 from Donald and Karen Humm. The Zueges also own a rental property located at 2740 Oak Drive through their company, plaintiff HB Holdings, LLC. They purchased the rental property in 2015 from the children of Hank and Darlene Kienahs.

The Zueges did not own their residence or their rental property for 20 years prior to the government's acquisition of the waterbed in 2005 and 2006, but that does not doom their claims if they can "tack" their period of possession with that of the previous owners. *See Wilcox*, 2014 WI 60, ¶ 21. In other words, they must adduce evidence that the Humms and Kienahs maintained docks in the water since at least 1985, and that the footprint of those docks was the same, or at least overlapped with, the Zueges' current docks. *See id.* The Zueges admit that they lack evidence sufficient to establish either of these things. In his deposition, Douglas Zuege testified that there was a dock in the water at both his residence and his rental property when he purchased those properties. But he admitted that he doesn't know when those docks

8

were installed, or whether the size, shape, or location of those docks changed at any time before he purchased the properties.

The Zueges' sole argument in opposition to summary judgment is that discovery is ongoing, so they might still be able to establish adverse possession of the waterbed below the docks at their residence and rental property. Dkt. 86, at 25–26. But the Zueges have not provided "specified reasons" why they cannot present the facts necessary to oppose summary judgment now, nor why they believe that they might be able to obtain those facts later. *See* Fed. R. Civ. P. 56(d). Summary judgment is the "put up or shut up" moment at which the non-moving party must demonstrate that it has evidence that requires a trial. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). The Zueges and HB Holdings have admitted that they lack the necessary evidence to support their claims, so the court will grant the government's motion for summary judgment on those claims.

### 2. Mary Sullivan

Mary Sullivan owns the property located at 4516 Oak Drive. Sullivan purchased that property in 1990 from the estate of Andrew Walchak, who had lived there since at least 1960. Sullivan moved into her house after 1985, so her claims rely on tacking her period of possession on to Walchak's.

Sullivan says that she has adversely possessed both the waterbed where Walchak kept a dock and gangplank and the shoreline where Walchak made various improvements. The court concludes that Sullivan has sufficient evidence to proceed to trial on the waterbed claim and on the shoreline claim for the area where Walchak installed concrete steps. But the court will grant the government's motion for summary judgment as to Sullivan's other shoreline claims.

### a. Waterbed claim

Sullivan contends that she has obtained title by adverse possession to a portion of the waterbed where Walchak maintained a dock and attached gangplank. The parties agree for the purposes of summary judgment that the Walchak dock was located in the same location as Sullivan's current dock. Dkt. 92, ¶ 68. But the government contends that Sullivan has not adduced evidence sufficient to establish the dimensions of the Walchak dock with reasonable accuracy, nor has she adduced evidence that the dock was present for 20 continuous years.

To establish the dimensions of Walchak's dock and gangplank, Sullivan relies on the declarations of Robert Goodno, who lived three houses away from Walchak during the 1960s, and whose parents continued to live there for several more decades, and from Stacy Mitby, who lived next door to Walchak in the 1960s and 1970s. Goodno said:

> Additional docks existed at that time [1960], and still exist today, including. . . [t]he dock located at the current address of 4516 Oak Drive that belonged to Butch Walchak at that time. Butch's dock was larger than the one that exists today (it was approximately 12 x 16 feet) as he pulled two flat bottom boats onto it and had a locker to store boat and fishing gear.

Dkt. 82, ¶ 6(c). Stacy said: "I can say based on my knowledge and memory that Butch's dock and gangplank were in the same location and essentially the same size, if not slightly bigger, as Mary's current dock and gangplank." Dkt. 84, ¶ 9. Stacy also provided a 1972 photograph, which depicts her and her cousin Byron Mitby on the dock at Stacy's parent's property. Dkt. 84-1. Walchak's dock is visible directly behind Stacy and Byron in the 1972 photo. Dkt. 92, ¶¶ 59–60.

The government argues that Goodno and Stacy lack foundation for their purported knowledge of the dimensions of Walchak's dock, because neither of them ever measured the dock. The government appears to be arguing that a witness has to have measured something

to testify about its size, but the government cites no authority for that proposition, nor is the court aware of any. On the contrary, courts routinely allow lay witnesses to estimate sizes and distances based on their personal observations. *See Ryan v. Kohl's Corp.*, No. 17 CV 5854, 2018 WL 4616355, at *1 (N.D. Ill. Sept. 26, 2018) (plaintiff didn't need to measure distance between store's merchandise racks to estimate that her wheelchair couldn't fit between them); *see also Roberts v. Hochstetler*, 592 F. Supp. 703, 708 (N.D. Ind. 1983) (plaintiff's estimation that he had walked 20 to 25 feet in a given time was rationally based on his perception). Goodno and Stacy have said that they were Walchak's neighbors and that they observed his dock on a regular basis. That's enough to explain how they know that Walchak's dock was approximately the same size as Sullivan's current dock, or maybe slightly larger.

As for Walchak's evidence of 20 years of continuous possession, Goodno said in his declaration that the Walchak dock was present in 1960 and "still exist[s] today." Dkt. 82, ¶ 6. The parties agree that that statement isn't strictly true, because in 1990, Mary Sullivan's husband Terry replaced the dock that was in the water with a new dock. Dkt. 91, ¶ 127. But a reasonable trier of fact could infer that Goodno meant that there was *a* dock in the water at that location from 1960 to the present. That would be enough to show continuous possession for the requisite time period, so the court will deny the government's motion for summary judgment on Sullivan's adverse possession claim over the waterbed.

### b. Shoreline claim

Sullivan also brings an adverse possession claim over the shoreline behind her house, which she says Walchak "usually cultivated and improved" by trimming vegetation and installing concrete stairs, rip rap, and a shed.

11

The court concludes that Sullivan has adduced sufficient evidence to support her claim over the area where the concrete stairs sit. To establish 20 years of continuous possession, Sullivan relies on a declaration from Walchak's neighbor, plaintiff Eugene Mitby, who said that Walchak installed the stairs in 1960 and that they still remain there today. Dkt. 78, ¶¶ 14–15. The government doesn't dispute that Eugene's declaration, if admissible, is enough for a reasonable trier of fact to find 20 years of continuous possession. But the government argues that Eugene's declaration should be rejected as a sham affidavit because it contradicts Eugene's deposition testimony.

The sham-affidavit rule allows courts to reject a declaration or affidavit that plainly contradicts a person's sworn testimony. *See James v. Hale*, 959 F.3d 307, 3015 (7th Cir. 2020). But the rule applies only to "contradictions so clear that the only reasonable inference [is] that the affidavit [is] a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry University, Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). In other words, a declaration can be rejected as a sham only when the witness gave "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* at 572 (internal quotations omitted).

In this case, Eugene's deposition doesn't plainly contradict his declaration, so there is no reason to reject the declaration under the sham-affidavit rule. The government points out that when it asked Eugene whether he knew of any "shoreline improvements" made by the Walchaks when they owned the property, Eugene answered, "No." Dkt 68 (Eugene Mitby Dep. 47:10–13). But "shoreline improvements" is a vague term, which doesn't unambiguously cover a set of concrete stairs leading from the shore up to a house. There is no clear contradiction

between Eugene's testimony that he didn't know of any "shoreline improvements," and his statement that Walchak installed his concrete stairs in 1960.

That leaves Sullivan's claim for adverse possession over the portions of shoreline other than her concrete stairs. Relying on Robert Goodno's declaration, Sullivan asserts that Walchak usually cultivated and improved the shoreline by trimming vegetation and installing rip rap. Dkt. 92, ¶ 64. But Goodno did not mention Walchak installing riprap in his declaration. As for trimming vegetation, Goodno said that "[o]ver the years, the Walchaks maintained the shoreline by trimming vegetation, trimming trees, and removing brush." Dkt. 82, ¶ 13. But Goodno admits that he left La Crosse between 1966 and 1970 to serve in the Air Force, so he has no personal knowledge of whether Walchak trimmed vegetation during that period of time. Nor does Sullivan have evidence that anyone trimmed vegetation along the shoreline around 1990, because the parties agree that the property was vacant for a period of time around then after Walchak died. Dkt. 72 (Sullivan Dep. 15:22–16:11; 17:4–8). (The parties don't say how long the property was vacant.) These gaps in the record mean that Sullivan cannot establish 20 years of continuous shoreline possession based on trimming the shoreline vegetation.

Sullivan also asserts an adverse possession claim over a portion of shoreline where she keeps a small shed, but she cannot establish the requisite 20 years of possession for that area either. Sullivan said in her deposition that the shed has been there since 1990. Dkt. 72 (Sullivan Dep. 32:7–9). But that's less than 20 years before the government acquired the property, and Sullivan has no evidence that the shed was there before that.

In sum, the court will grant summary judgment to the government on Sullivan's claims to the portions of the shoreline other than where her concrete stairs are located. Sullivan's claims about her dock, gangplank, and concrete stairs will proceed to trial.

### 3. Eugene and Judith Mitby

Eugene and Judith Mitby own 4510 Oak Drive, which they acquired from Eugene's mother in 1983. Dkt. 91, ¶¶ 26–29. The Mitbys assert title via adverse possession over portions of their shoreline where they have stairs, a shed, and rip rap, and over a 16x20 foot portion of the waterbed where they have a permanent dock.[4] The government moves for summary judgment only on the waterbed claim.

The government contends that the Mitbys' waterbed claim fails because they cannot establish when their dock was installed. The Mitbys have no documentary evidence of when the dock was installed, so they are relying on Eugene's recollection, which was inconsistent during his deposition. *See* Dkt. 58 (Eugene Mitby Dep.) 30:19–21 (dock was not installed while his mother owned the property); 31:1–11 (dock was installed while his mother owned the property); 32:2 (dock was installed in "'80, '81, somewhere around there"); 32:5–18 (dock was installed while his wife was pregnant, which was in 1974 or 1976); 32:23–24 (cannot remember when the dock was installed). In his declaration, Eugene attempted to clear up these inconsistencies, explaining that he installed the dock "in or around 1980 or 1981 for my mother, Margaret, when she owned the property before me." Dkt. 78, ¶ 4. But Eugene does

---

[4] The Mitbys also have a 4x40 foot movable dock next to the permanent dock, which was installed in 2015. The Mitbys admit that they cannot establish adverse possession of the waterbed underneath the movable dock.

not actually explain in the declaration why his initial testimony on that issue was so inconsistent.

Nonetheless, the court concludes that Eugene's testimony is sufficient to create a triable issue on his adverse possession claim. It's clear that Eugene did not know exactly when he installed his dock, but he was consistent that it was before 1985, which is all the trier of fact needs to find for the Mitbys to establish 20 years of continuous possession. Eugene's inability to remember the exact date might affect his credibility on the issue of when he installed the dock, but credibility determinations are a question for trial, not summary judgment. *Flowers v. Renfro*, 46 F.4th 631, 636 n.2 (7th Cir. 2022).

The government also argues that Eugene's testimony about when he installed the dock is hearsay, because Eugene said in his deposition that he had no independent recollection of when he installed the dock and was relying on what his wife Judith told him.[5] *See* Dkt. 68 (Eugene Mitby Dep. 33:11–13). But read in context, the court does not understand Eugene's testimony to be that he lacked any personal knowledge about when he installed the dock. Instead, Eugene appeared to be saying that he was relying on Judith's recollection for only the portion of his testimony when he said that the dock was installed in 1974 or 1976, when Judith was pregnant with their son Danny:

Q: Okay.  But you recall your wife was pregnant with Danny at the time?

A: That's what she said.

Q: That's what she said, meaning – when did she say that?

---

[5] Plaintiffs do not attempt to rely on Judith's recollection of when the dock was installed. In his declaration, Eugene explains that Judith was recently diagnosed with dementia and her memory is unreliable. Dkt. 78, ¶ 12.

A: We're just talking about one day recently.

Q: Recently?

A: Mm mm.

Q: Okay. So you're basing that information just on what Judith had told you.

A: Yes.

Q: Okay. You don't have an independent recollection of when it was?

A: No.

Dkt. 68 (Eugene Mitby Dep. 32:25–33:13). This interpretation of Eugene's testimony is bolstered by his declaration, in which he explained, "during my deposition, I stated that my wife believes I installed the Permanent Dock when she was pregnant, but I do not believe that is true." Dkt. 78, ¶ 11. The court will not reject Eugene's entire testimony about when the dock was installed as hearsay.

### 4. Stacy Mitby

Stacy Mitby bought the property located at 2718 Oak Drive in 2013 from Robert Goodno, who was selling it in his capacity as personal representative of his mother's estate. Goodno's parents, Margaret and Selmer Goodno, bought the property in 1960. Dkt 82, ¶ 2; Dkt. 79-2. Because Stacy acquired her property after the government bought the adjacent land, her adverse possession claims are based solely on the Goodnos' activity on the property.

To support her claims, Stacy relies primarily on the declaration of Robert Goodno, who stated that his father installed a dock in 1958, expanded that dock to approximately 8x20 feet in 1963, and then added an additional 4x8 foot long section in the early 1980s. Dkt. 82, ¶¶ 9–11. Goodno also stated that his father maintained the shoreline by building a retaining wall, keeping a path open to the shoreline, and trimming vegetation. *Id.* ¶ 12.

16

The government does not argue in its briefs that the facts in the Goodno declaration are insufficient to create a triable issue on Stacy's adverse possession claims. Instead, the government argues that Goodno's testimony is inadmissible because (1) plaintiffs did not identify him as a witness in their initial disclosures; and (2) Goodno provided insufficient foundation for his knowledge of the dock's measurements. The court has already discussed both issues. Plaintiffs gave adequate notice that Goodno was a potential witness in the case, and witnesses do not need to have measured a dock to testify to its approximate dimensions. Stacy Mitby's waterbed and shoreline claims will proceed to trial.

## 5.  Richard and Georgia Amundsen

Richard and Georgia Amundsen own two properties on Oak Drive: their residence at 2732 Oak Drive, and their rental property next door at 2726 Oak Drive. The two properties involve different issues, so the court will analyze them separately.

### a.  Residence

The Amundsens purchased their residence in 1978. The property was a vacant lot when they bought it, with no shoreline improvements or dock. In his deposition, Richard Amundsen testified that he installed a dock "around 1982, '83 . . . around the time [his] first son was born." Dkt. 69 (Richard Amundsen Dep. 18:14–24). He then replaced that dock "[a]round the early 1990s" with a new dock, which is still present today. *Id.* 21:25–22:22.

The government argues that the Amundsens cannot establish 20 years of continuous possession because Richard couldn't pinpoint the exact year when he installed his first dock. But the Amundsens don't need to identify the exact year; they only need evidence sufficient for a reasonable trier of fact to find that the dock was installed before 1985. A reasonable trier of fact could find that from Richard's testimony that he installed a dock "around 1982,

17

'83 . . . around the time my first son was born." The government points out that Richard testified later that he had "not a clue" whether the dock was installed before or after his son's birth. *Id.* 19:2–4. Richard's uncertainty about the exact date is fair game for cross-examination, but it's not a basis for summary judgment.

The government also argues that the Amundsens have failed to establish the location and dimensions of their old dock with reasonable accuracy. The old dock's dimensions matter because the Amundsens replaced their dock in the middle of the 20-year period, so their adverse possession claim is limited to the portions of waterbed where the footprints of the old dock and the new dock overlap. The Amundsens' old dock was an "L" shape, and the new dock is a rectangle. *Id.* 28:23–25. In an attachment to his declaration, Richard drew the following image from memory to show the overlap between the footprints of the two docks.



Dkt. 81-1.

The government contends that Richard's drawing of the overlap between the two docks should be rejected for two reasons. First, the government again raises the sham-affidavit rule, arguing that the drawing should be discounted because Richard testified that he was "just guessing" about how the square footage of the old dock compared to the new one. Dkt. 69

18

(Richard Amundsen Dep. 25:10–11). This is a close question, but the court will not reject Richard's drawing as a sham. The Seventh Circuit has cautioned that the sham-affidavit rule is narrow and must be applied with caution to avoid improperly deciding credibility issues. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559 (7th Cir. 2015) In his declaration, Richard explained that he believed during the deposition that the government was asking him to provide the measurements for the two docks, and he was unable to do that, but that he can visually depict how the footprints of the docks overlap with each other. Dkt. 81, ¶¶ 5–7. The ability to provide measurements and to provide a visual depiction are close concepts, but it's not unreasonable that a witness might be able to do one but not the other. The court will therefore accept Richard's drawing at this stage and leave the question of his credibility for trial.

Second, the government says that Richard provided no foundation for his belief that the new dock was located in the same place as the old one. But that's not true. Richard testified that both docks had gangplanks located at the bottom of the stairs that go from his house to shoreline, which explains how he knows that the two docks were located in the same place along the shoreline. Dkt. 69 (Richard Amundsen Dep. 27:22–28:8). Richard's testimony and declaration are sufficient to create a triable issue on his claim for the waterbed beneath the dock at his residence, so the court will deny the government's motion for summary judgment for that claim.

### b. Rental property

The Amundsens bought their rental property in 1987 from Albert and Loretta Werner, who had owned the property from 1979 to 1987. The Amundsens now assert both shoreline and waterbed adverse possession claims, based on tacking the Werners' period of possession with their own.

As for the shoreline claim, the government's only argument for summary judgment is that Albert Werner's declaration about his shoreline activities is inadmissible because the Amundsens did not disclose Werner as a potential witness. The court already rejected that argument, so the motion for summary judgment on the shoreline claim will be denied.

As for the waterbed claim, the Amundsens say that a dock and gangplank has been present over a portion of the waterbed for the requisite 20 years. In his declaration, Werner stated that he kept a gangplank and a "small dock" in the water, *Id.* ¶ 4, which Richard Amundsen testified was still present when he bought the property. Dkt. 69 (Richard Amundsen Dep. 36:16–23). Five to seven years later, Richard replaced the Werners' dock with a second dock, which was "[m]aybe 25 percent" bigger. *Id.* 38:2–23. And around 2015, Richard replaced that dock with the current dock. Richard estimates that the current dock is about 50 percent bigger than the second dock, and about 60 or 65 percent bigger than the Werners' dock. *Id.* 45:7–16.

The parties agree that the Amundsens' waterbed claim is limited to the portion of waterbed where the footprint of the Werners' dock overlaps with the footprint of the second dock. (The current dock doesn't matter because it was installed after the government acquired the waterbed.) Richard testified in his deposition that both the Werner dock and the second dock used a gangplank that originated in the same spot. Dkt. 69 (Richard Amundsen Dep. 46:4; 55:14–15) ("Q: Has the gangplank always been next to that tree? A: Yes."). And as he did with the dock at his residence, Richard provided a drawing, in which he indicated the

footprints of the original Werner dock (green) and the second dock (green and orange) in relation to the current dock.



Dkt. 81-2.

The government says that the Amundsens cannot establish the dimensions of their waterbed adverse possession claim because Richard said in his deposition that he didn't know exactly how the footprints of his previous docks overlapped. But the law doesn't require the Amundsens to establish the boundaries of their claim with survey-like precision; all they need is a "reasonably accurate" estimate of the footprint of the old docks. *Droege,* 88 Wis. 2d at 146. In this case, a reasonable trier of fact could find that Richard's drawing is reasonably accurate, because Richard knew the rough size of the previous docks and he knew that they were both attached to a gangplank located in the same spot. That's enough for the Amundsens to survive summary judgment on their rental property's claim.

CONCLUSION

The court's summary judgment decision resolves all claims for plaintiffs Douglas Zuege, Elizabeth Zuege, and HB Holdings, LLC, so they will be dismissed from the case. The case will proceed to trial on the following claims:

- Mary Sullivan's adverse possession claims over the waterbed where Andrew Walchak's dock and gangplank were located, and over the shoreline where her concrete stairs are located.

- Eugene and Judith Mitby's adverse possession claims over the waterbed beneath their dock and gangplank, and over the shoreline where they have structures and improvements.

- Stacy Mitby's adverse possession claims over the waterbed where the Goodnos' dock and gangplank were located, and over the shoreline where the Goodnos had structures and improvements.

- Richard and Georgia Amundsens' claims over the waterbed behind their residence where the footprint of their old dock and new dock overlap, and of the shoreline where they have structures and improvements.

- Richard and Georgia Amundsens' claims over the waterbed behind their rental property where the footprint of the Werners' dock overlaps with the footprint of the Amundsens' second dock, and of the shoreline where they and the Werners had structures and improvements.

There is one additional issue. To accommodate the court's schedule, the trial date in this case will need to be moved by one day, to begin on August 25, 2026, instead of August 24, 2026.

ORDER

IT IS ORDERED that:

1. The parties' stipulation to dismiss Kirk Friedline's remaining claim, Dkt. 62, is construed as a motion to amend the complaint and GRANTED.

2. Defendant's motion to exclude Robert Goodno and Albert Werner as witnesses, Dkt. 87, is DENIED.

22

3.  Defendant's motion for summary judgment, Dkt. 63, is GRANTED for plaintiff Douglas and Elizabeth Zuege's adverse possession claims, plaintiff HB Holdings, LLC's adverse possession claims, and plaintiff Mary Sullivan's adverse possession claims over portions of her shoreline other than where her concrete stairs sit. Defendant's motion for summary judgment is otherwise DENIED.

4.  Plaintiffs Kirk Friedline, Douglas Zuege, Elizabeth Zuege, and HB Holdings, LLC, are DISMISSED.

5.  The trial date in this case is MOVED to August 25, 2026.

Entered June 26, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge